May it please the court, Beth Mary Bollinger on behalf of the appellant, originally defendant Gabrielle Koenig-Lopez, a.k.a. Lopez. This is a case where it's a 2255 motion asking to reverse a conviction that was rendered in 2002. I actually was this particular defendant's appellate counsel for her direct appeal. I was not trial counsel. And the issue that came up, and it didn't come up in the context of us receiving the information, but another defendant receiving the information, that there was a Brady hearing in the middle of the 2002 trial that was prompted because there were two confidential informants in that original trial. One of them was having serious credibility problems that were coming out in the middle of the trial itself. It prompted a request, as my understanding, prompted the request to have Brady material reviewed for purposes of the second informant. That person's Brady review of the material was done with the head of the DEA, that informant's file, head of the DEA and criminal chief for the U.S. Attorney's Office. So let's, maybe I can help you sharpen the issue. Yes. There are two issues here. One is, is this second or successive? Is there a problem under 2255, which you haven't addressed yet? The other is, assuming that it's not, as Judge Quackenbush found, it's not a second or successive problem, what do we do with the fact that she's caught on tape talking in terms of drug jargon? We get to the prejudice prong. Doesn't that make the information, assuming that kind of information would have made it into your trial, does that render it harmless? It does not, in my opinion. Why don't you address those two issues? Do you want me to do the second or successive first? That was an issue that came up in 2007 because of the new decision now of the Supreme Court of Burton versus somebody, Stewart. And what I have argued in the brief, and I actually think we're really on very solid ground here, is that the U.S. Supreme Court was dealing with, you know, typical cases that were coming before it, that were where somebody was coming up with one issue and then would come back with a second or successive petition. And, in fact, the Supreme Court itself even referred to the not uncommon situation of challenging, for instance, the sentencing and then having a challenge in a different context, and so that they were trying to avoid that kind of piecemeal litigation. But the Supreme Court also stated that they made an assumption. They said, assuming the Ninth Circuit's legitimate excuse exception is correct, and then they went on to deal with this more pretty typical not uncommon is the way they described it situation of how the defendant had raised two different petitions. Let's say, if I could interrupt you for a moment, let's say that Burton is inapplicable. The fact pattern in Burton is not the same as the fact pattern here. Let's say we decide that. Is there any case, here we have, there was a completed habeas process. New facts are discovered. We've got a statute that says, in that case, you can come back to the Court of Appeals to get authorization to proceed on a second or successive. Why isn't 2244B3C, which requires that, simply controlling? Is there any other case that you're aware of where it was a habeas petition challenging a conviction and then a second habeas petition challenging the same conviction that wasn't deemed to be second or successive? None of the cases you cited fell into that category. And, Your Honor, when I did the research, I did not find a particular case on point, a specific case on point. And so I really am going with the language that the Ninth Circuit used, that the U.S. Supreme Court has not rejected, which is that there can be a legitimate excuse. I didn't. I looked. It's not necessarily an area of the law. I have not actually done 2255s. I've been practicing before this Court for 15 years, and now I've had two opportunities in the last year to explore how they work. Most of these come up as state habeas, and a lot of the jurisprudence seems to bleed over from that. And I would point out, Your Honors, that at the time that Ms. Koenig filed, on her own pro se, a habeas petition, all the government, meaning the prosecutor as well as the DEA agent who hid the information, everybody knew. My understanding was that the ultimate Bailey memo had made its way into this particular confidential informant's file, and that information was not revealed to the pro se litigant who was doing her 2255 motion. So I think that there was a holdback by the government in that circumstance. I mean, I've been saying that all along, whether it's DEA or the prosecutor. But there was a holdback that really ñ and that's where Judge Quackenbush said if ever someone should not be penalized or treated as having a second or successive petition, it is in the case where the government is the one who's holding all the information and then tries to ñ Well, even accepting that, I think what Judge Akuta is saying, why isn't that addressed under 2255 second or successive? You get over the first prong, and then the question is whether it's prejudicial. My recollection is it's not just a procedural issue with the way the 2255 aspects work, where, okay, we'll go to the court of appeals first to get the permission. I believe there's also a higher standard of proof that Ms. Koenig would then be under, that it's not simply a procedural matter. If it were simply a procedural matter, I don't think I'd be making as much argument as I have. With regards to the other issues, Your Honor, I do think it's two-pronged. You have the Brady violation, so you look to the reasonable probability of whether the outcome would have been different, which is not more likely than not, but a reasonable probability. But then you also have what we've raised under the court's supervisory powers of if this is outrageous government conduct, which actually Judge Crockenbush didn't make a ruling on that particular second prong, but he did certify the issue for appealability. So it's two different issues. And so to speak to the reasonable probability would be responding to your question as to, well, she's on tape. The government way overemphasizes how that tape is reflected. There's a reference at one point to two sevens. There is a dispute in the record as to what that particular female voice was intending to say. The rest of the cassette tape has to do with a co-defendant and the informant, but the only reference which they allege was Ms. Koenig had to do with two sevens. And then, you know, so there could have been an issue of which, you know, instead of having this huge trial with David Palmer being the, you know, the lovable confidential informant who's ever had problems for 18 years or whatever the amount was, it could have been a more simplified trial. And then the issue of two sevens, there was an issue of was it a piece of paper that she was reading from. You know, there were other people in the house. There were a lot of things that could have been done with a trial dealing with, you know, the phrase of two sevens. And seven being also those are two numbers. Twos and sevens are two numbers. We're talking about a whole list of analysis. There was a larger tape, but in terms of the actual participation of the female voice. No, I understand. Yeah. I'm talking numbers. That's why she was using numbers. Well, yes, but I'm just saying that it's not like an entire tape recording of. . . I understand.  I've read the transcript. Okay. Thank you, Your Honor. But I do think. . . I think it was very important also that Ms. Koenig was convicted of both counts, even though Judge Quackenbush threw out the second count. The second count had to do with possession of the larger amount of drugs that were found in the house and said she had absolutely nothing to do with that amount of drugs. He talked about the spillover effect that having the second informant at her trial could have had. And he also indicated that in 23 years of being on the bench, he had never done that kind of Rule 29, but he did do it in that case. So I think that we have already upon the record the evidence of the spillover effect. And I cite through the record why this case is unique. But I would say also in terms of outrageous government conduct, Your Honor, there was not just what happened in that day, not just what the DEA did, even having that phone call two months earlier and not revealing that information, not just the fact that the U.S. attorney who was doing the review of the file never even asked, so is there something I should know here, since it was a trial that was already having Brady issues, but then that the DEA, this DEA agent has been promoted. I mean, he has been promoted. This is how seriously the government takes the circumstance. Then when Ms. Koenig did her 2255, her first 2255 motion, this stuff was not revealed to her. This has not been a forthrightness. And in the way the material came up in the Height case, it was not a forthright circumstance. I never received a call as Ms. Koenig's counsel, oh, by the way, this is going on in a joint case. I found out through the other defense counsel, and I'm completely out of time, and I'm meant to reserve at least a minute, so I apologize. Okay. Good afternoon. May it please the Court. My name is Stephanie Whitaker, and I'm here on behalf of the United States Attorney's Office for the Eastern District of Washington. Your Honors, the first thing that I would like to address is that this issue is taken very seriously, certainly taken very seriously by myself as not only the trial attorney for the underlying case, but also the initial attorney for the United States v. Height case. This is a concerning issue, and this did involve a memorandum that was written by a lieutenant of a local task force. And what was a concern to the United States is once we realized that the memo was actually written, that he actually put his concerns in writing, that memorandum did not get into the file until the task force joined with DEA. Once the memo got into the file, it was then disclosed from that point forward and was disclosed by the United States in the United States v. Height case and drawn to the attention of Judge Shea to address the memo. And the memo was of concern because in looking to investigate the core inferences and the allegations made in the memorandum, the question from the United States is, what's the basis of this memorandum? Where does this memorandum come from? And as the record reflects, and including all of the testimony, the memorandum was really based upon concerns by that lieutenant. There was no specific instance of conduct or misconduct by this informant. It was simply based upon a rumor that this lieutenant had heard, and he vocalized those concerns in the memorandum. The controversy was that there was supposedly a phone call between Lieutenant Bailey and the resident agent in charge, Selby Smith. Selby Smith testified before Judge Shea that he did not recall anything specific being provided during that telephone call. Lieutenant Bailey testified that he believed he conveyed that information to Selby Smith, certainly the information that they were no longer going to utilize this informant. At that time, Selby Smith testified that they had no information in the record that there was any misconduct by this informant. And DEA's practices, as it occurred in this case, is that these informants are closely monitored and wired. This particular informant was a career informant. He was paid for the information he provided. He was not working off any charges. He was what defense counsel calls a mercenary informant. And in the history with DEA, dating back to the 1990s, there had been no evidence of misconduct for this particular informant, so DEA chose to continue to utilize this informant. That particular phone call is what became the issue before this trial. That phone call was not written down. It was not placed in the informant file. There was no willful conduct on the part of the United States Attorney's Office because there was no memo in the file to disclose. And the only reason the United States highlights those facts is because that does go to the outrageous government conduct claim, that there was no willful or intentional conduct on the part of the United States Attorney's Office to hide this information or to not disclose this information. Now, wait a minute. I just want to make sure I understand. Before the Lopez trial, you all knew about the phone call but not about the memorandum? No, Your Honor. We did not know about the phone call. The phone call was between resident agent in charge, Selby Smith, and Lieutenant Bailey. The government knew about it. Selby Smith with DEA. Yes. Yes. Selby Smith knew about the phone call. It was disputed to the government. It is, Your Honor. Before the Lopez trial, that information was there orally in the possession of the government but not written in a file where others than the DEA agent could have been alerted to it. It was not memorialized. And I think that what was litigated before Judge Shays, what exactly occurred in the substance of the phone call, and I think what we've all learned is that a telephone call is not a manner in which to communicate information about an informant. And that was not disclosed. After that phone call, did DEA then decide not to use Palmer again? No, they continued to. They did utilize Mr. Palmer again, and he was utilized. I thought you said they stopped using him after the memorial from the lieutenant was discovered. No, Your Honor. They continued to use him. They continued to use him based upon what came out in that evidentiary hearing, that there was nothing within that memorandum to memorialize any evidence of misconduct. In fact, Lieutenant Bailey testified it was based upon rumor and third-hand information. He did not intend it to be necessarily effective upon other law enforcement agencies. He was communicating. But it's information in the possession of the government. That is correct, Your Honor. Now you're coming in, though, and saying, well, this was not known to you, but it was clearly braiding material which was disclosed when it was made known. And now you're faulting and saying the defendant, who had no idea about any of this, is barred by 2255 because of second or successive. How do you get to that point? Your Honor, and I appreciate that. That was one of the issues I discussed at length with my criminal chief, because I do think at first glance it seems as if there is a penalty being associated to the defendant. But in looking at the question that was presented earlier, there is a statutory procedure that is still afforded to this defendant. So she would not have any of the burdens if it had been timely disclosed. But if you all get away with holding back Brady stuff and then turn it over, then now she's got a little sharper hill to climb because it's coming in as a second or successive. And the government thinks that's what the statute intended? Well, Your Honor, if I may have a two-part response to that. The first is I don't think we've gotten to the core legal issue before this Court as to the question as to whether this Brady information was material to this defendant, material to the extent that it would have been. Let's assume it was material. Let's assume that it was material for purposes of the question of jurisdiction. Yes. Your Honor, I still think that this defendant still has an avenue under the procedural requirements. There is still that prong where she can present to that board to review as to whether this is new evidence that would justify a certificate. To what board? I'm sorry? To what board? I'm sorry. Under Procedure 2244. So she's supposed to come to the Court of Appeal and says, the government has withheld material Brady information from me, and now I have to, because they have withheld it from me, satisfy you under the tougher standard under AEDPA so that I can litigate an issue that if it had been turned over during the trial and litigated, I might have had a chance to take before the jury in the trial court. And if, or if it had been disclosed before I had filed my direct appeal or my first habeas petition, I wouldn't have had to go through the second or successive trial. Again. That's what the government's position is. Your Honor, your Honor is again asking that. Judge Quackenbush wasn't impressed by it. And I understand that. Again, I think this Court is asking the government to assume that it was material Brady information, and that has been a core problem the United States has had with this particular memorandum. We do not believe it is material Brady information. How does that, so you don't think you had to disclose it at all? Is that your position? No, I'm saying that it was not material pursuant to the analysis. You're asking the Court of Appeal now to sit in a position on a motions panel, apparently, to take a look at material that you have, information that was disclosable, but the motions panel is supposed to decide whether or not this is material to a proceeding, which it has no idea about. The district court has no idea about that. The trial court, the trial court can tell whether or not it was material. How are we supposed to know whether it was material or not? I appreciate the Court's concerns. You know, I'm having a lot of trouble with the government's, what you're inviting us to adopt as a rule in this circuit, is that the government may withhold Brady information, which it had an obligation to turn over, whether it was material becomes a defense as to whether it had any ultimate impact. But it was clearly within the government's obligation to turn it over. You're acknowledging that. No, Your Honor, and I apologize. I don't mean to misspeak. Our initial approach, as it was when we presented it in camera to Judge Shea, is that we question whether it was Brady material. We question whether it was Brady material because, again, it was not based upon any admissible exculpatory evidence. It was not based upon any specific instance of conduct for purposes of impeachment that would be admissible in a court of law. So the United States' first position was to challenge whether, in fact, in the first place, it was Brady material. And what did Judge Shea hold on that? Judge Shea, during that hearing, said that I am going to err on the side of caution and disclose it. However, he did exclude that entire memorandum from trial. He may have, but he decided that it was material enough to be disclosed. Correct? He did. So what are we supposed to do? Are there degrees of materiality? I'm not suggesting there are degrees of materiality. I'm suggesting that all we have is the Burton decision that really does go back to that procedural requirement. Burton is a different case. What you're saying is that the United States, okay, the United States, Burton wasn't talking about the failure of the government to disclose something. It had to do with a timing, a rightness issue on a state habeas proceeding. We're talking about the United States. We're talking about a government prosecution. We're not deferring to the state. There's no exhaustion, rightness issue on that.  Now you're telling me it wasn't material in your argument, therefore we didn't have to disclose it. But then you're telling me that the judge to whom it was presented, not the trial, he wasn't, was he the trial judge in the Lopez case as well? No, Your Honor. That was a different judge. So now the court who tried the actual Lopez trial has never been under your system, would never have a shot at deciding whether it was material. We would have to make that decision, correct? Your Honor, if I follow the court's question, the only thing that I can do in my mind to keep this straight is to go back to what Burton is suggesting. And I do think that there's a ruling there that if there's been a previous finding as to the substantive issue on the merits of a habeas petition and a second one is filed, then they must comport with 2244. Even if it's because the government withheld relevant evidence on it? Your Honor, I think the argument is that 2244 affords them the opportunity to present their argument as to new evidence. The government can get away with its failure to disclose grating material. It gets an advantage if it holds it back. It's certainly not my intention to ever try and get away with anything to a disadvantage of a defendant's rights. That's the net effect, though. If the government fails to discharge its obligation to disclose grating material, and you're saying to reach the question we have to decide that it's material, if you didn't have to disclose it, then there's no issue. So that's why I asked you to assume materiality. It's a material item of evidence that the government should have disclosed. Now the government's position is it got disclosed after the direct appeal and the first 2255 proceedings have been completed. It wasn't litigated. There was no adjudication on the merits because no court nor the defendant had access to it until the government finally discloses it. Then the government says the remedy is under AEDPA, where the defendant now has a burden that the defendant would not have had if it had been timely disclosed. It's the government's fault that the defendant didn't raise it, but you're saying that the government gets the benefit of this screening statute which Congress was enacted because it wanted to get rid of frivolous appeals, and yet you're saying because the government, which is the cause of the failure of the defendant, nonetheless has to meet that standard. Am I fairly summarizing the government's position? Your Honor, I think that, obviously, the government, again, does not want to violate a defendant's rights or push things as far as it has to. I'm not suggesting. I'm just asking for the end result of the construct. I think the end result is that there is a procedure in 2244 for the raising of new evidence, and I think this case falls within that procedure. Your Honor, am I past time now? Yeah, you're over time. Thank you. Thank you. Alice, my colleague, did you have a question? Okay. You can have it. I think we have a little bit of a minute. I'm sorry. The Hyde Trial Court did say that one of his rulings was the DEA, after the information came from Chandler, the DEA started to monitor this informant more closely, which was part of the reason that the Hyde ruling went down the way that the Hyde ruling did. Also, in my reply brief, I go through all pre-Brady hearing areas where there's. . . We have the briefs. We don't need to repeat that. That's why I was going to repeat them, just point that out. It's in the reply brief. And also, with regard to your question on the evidence, there was an issue whether the female voice, which was Ms. Kamey, whether she was physically present during the entirety of the discussions. And so that, I think, speaks to the minimization of the 2-7s reference. Okay. You've used it up. That's it. Thank you. Thank you both. The case argued is submitted. We'll do an adjournment. Thank you.
judges: Fisher, Gould, Ikuta